UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

EDWARD JAMES CROMER,

        Plaintiff,                      Case No. 2:16-cv-108

v.                                          Honorable Gordon J. Quist

SHANE PLACE, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Edward James Cromer, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Shane Place, Ken Tribley, Assistant Deputy Warden Steve

Niemi, Assistant Deputy Warden Dan Lesatz, Health Care Unit Manager Gloria Hill, Psychologist Maria Lanala, Officer Unknown Patirakas, Officer Unknown Reddinger, Officer Unknown Monvelle, Captain Unknown Delene, Unknown Sundberg, RN, N. Hulkoff, RN, Officer Unknown Tekho, Sergeant Unknown Haischer, Lieutenant M. Wealton, and Unknown Nurse #1, RN.

Plaintiff's complaint is largely unintelligible and asserts violations consisting of sexual abuse, voyeurism, "medical lock," "though control mule," "mental health position paper," "Mr. Wall-Eyes," racial and religious discrimination, "commercially unreasonableness and breach of contract," and "diabetes doomsday." Plaintiff appears to be complaining about the manner that health care is delivered to prisoners at AMF. Plaintiff states that custody staff interfere with health care staff and prevent medical staff from giving care to prisoners in accordance with their medical judgment.

Initially, Plaintiff claims that Defendants Place, Tribley, Niemi, Lesatz, Delene, Hill, and Lanala are responsible for a custom called Mr. Wall-Eyes, which consists of two or three officers accompanying the young pretty nurse when she makes medication rounds. As part of this custom, the officers conduct "penis checks" on prisoners. Plaintiff states that the older, less attractive nurses are left to make rounds on their own. Plaintiff asserts that Defendants have "sexualized the pretty nurse, and used her as a[n] object to re-inforce [sic] White Nationalism." After the young pretty nurse quit, Defendant Sundberg was hired. Plaintiff alleges that Defendant Sundberg is a former model, siren, and femme fatale and that her work performance, mixed with the officers' grandstanding, amounts to deliberate indifference. Plaintiff demanded that a medication line or window be operated, which would end "all acts of sexism, sexual abuse, and sexualizing."

Plaintiff alleges that on June 7, 2015, he filed sexual abuse charges against various officers, including Defendants Tekho and Monvelle. Plaintiff states that prisoners refer to

Defendant Monvelle as "Officer Chester" and that he "literally search out [Plaintiff's] penis." Plaintiff states that he was a victim of sexual abuse as a child and suffers from depression as a result, so that Defendant Monvelle's affects him more severely. Defendant Haischer conducted an investigation and Plaintiff told her that he had been molested by a church deacon for a period of seven years while he was a child. Plaintiff states that he should not have had to reveal this information to Defendant Haischer because she is not a licensed mental health professional.

Defendants Haischer, Delene, and Hulkoff were involved in investigating the sexual abuse charge by Plaintiff. Plaintiff questioned their involvement and asked questions regarding their qualifications as mental health professionals and whether they had any homosexual tendencies. Defendants refused to answer his questions. Plaintiff claims that their involvement constitutes false misrepresentation as a health professional in violation of state law. Plaintiff further contends that if a prisoner at AMF has a medical need, he must "appease" custody staff, because they control access to health care, prisoner medical records, and critical incident reports.

In September of 2015, Plaintiff wrote a complaint on Defendant Sundberg, stating that he would have nothing to do with a social sickness and "please do your job." Plaintiff alleges that Defendant Sundberg was pressured by officers to write a misconduct ticket on him for unauthorized communication and insolence. Plaintiff was found guilty and was sentenced to 12 days loss of privileges. Plaintiff successfully appealed the misconduct conviction, which was then overturned.

In March of 2016, Defendants Place, Delene, Niemi, Tribley, and Lesatz instituted a policy whereby prisoners are to have their hands handcuffed behind their backs when receiving medical treatment. On March 21, 2016, Plaintiff reported chest pains, dizziness, and numbness in his hand. Plaintiff was sent to health care, where Defendants Reddinger and Patirakas ordered him

to remove his wrist and hand brace. Plaintiff refused. Defendant Sundberg failed to consider any medical accommodation and merely went along with the officers' order. On March 30, 2016, Plaintiff sought dental care for a painful tooth. Plaintiff was required to remove his wrist and hand brace in order to receive care. On April 3, 2016, Plaintiff sought medical care because he was "bleeding from his rectum." Plaintiff "had to refuse treatment because [he] did not feel like being handcuffed." On April 5, 2016, Plaintiff was called out to dental and was handcuffed and ordered to remove his hand and wrist brace. On April 12, 2016, Plaintiff had a bad reaction to his medication and Nurse Suge told him that the only way he could be seen was if he agreed to have his hands cuffed behind his back. Plaintiff refused. On April 25, 2016, Plaintiff was sick and vomiting blood, but the nurse refused to see Plaintiff because he would not submit to have his hands cuffed behind his back. Finally, on April 30, 2016, Plaintiff was displaying symptoms of a stroke but was not seen by healthcare because he refused to be handcuffed.

Plaintiff alleges that Defendant Hill has allowed custody staff to dictate the way in which medical staff provides care to the prison population. Plaintiff states that when he is being interviewed on a grievance by a nurse respondent, officers stand over her shoulder and Plaintiff does not feel free to talk. Plaintiff states that on April 8, 2016, while Nurse Snyder was interviewing him on Grievance #827-12-F3, she was surrounded by four officers and Plaintiff was barely able to see Nurse Snyder over the officers' shoulders. Plaintiff further makes a conclusory assertion that he is an atheist and that Defendants are members of the Christian Identity religion. As a result, Plaintiff claims he is being discriminated against.

Plaintiff claims that he has paid over $300.00 in co-pays since being diagnosed with high blood pressure. Plaintiff claims that his rights are violated during treatment by officers commenting on the number of medications that Plaintiff takes, breathing over Plaintiff's

medications, seeing what medications Plaintiff is on, and listening to details regarding Plaintiff's medical condition. Plaintiff also claims that the repeated awakenings with banging doors and a flashlight in the face, a custom instituted by Defendants Place, Tribley, Delene, and Lesatz, can lead to Diabetes. Plaintiff seeks injunctive relief against Defendants Place, Niemi, Lesatz, Tribley, Delene, Wealton, and Haischer. In addition, Plaintiff seeks damages against Defendants Hulkoff, Hill, Lanala, Tekho, Monvelle, Reddinger, Sundberg, and Patirakas.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff makes a conclusory assertion that he is being discriminated against because he is an atheist. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff alleges no facts suggesting that he was intentionally treated differently than prisoners who are members of an established religion. Therefore, this claims is properly dismissed.

Plaintiff also claims that Defendants' treatment of him violates his rights under the First Amendment and RLUIPA. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*,

821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a); *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014). Plaintiff states that he is an atheist. Plaintiff is not alleging facts showing that he has any sincerely held religious beliefs, or that his rights to practice a religion are being substantially burdened. Therefore, Plaintiff's First Amendment and RLUIPA claims are properly dismissed.

Plaintiff also claims that Defendants violated his Eighth Amendment rights because they denied him medical treatment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In

other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258

F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

In this case, every incident in which Plaintiff claims that he was denied medical care was the result of his refusal to comply with instructions by security officers to submit to being handcuffed with his hands behind his back. In Plaintiff's own words, he "had to refuse treatment because [he] did not feel like being handcuffed." Nor does Plaintiff allege any specific facts regarding his need for a hand / wrist brace or allege that he would suffer an injury if he removed the brace. It is clear from the allegations in his complaint that Plaintiff had the ability to receive health care by complying with the security requirements, and he cannot claim that he was denied needed care as a result of deliberate indifference on the part of Defendants. Therefore, Plaintiff's claims that he was denied medical care are properly dismissed.

Plaintiff claims that the custom of having officers accompany pretty young nurses during their rounds constitutes sexual harassment. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the

unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment

standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

In this case, Plaintiff merely asserts that Corrections Officers accompanied the pretty nurse and conducted penis checks to make sure that prisoners did not expose themselves to the nurse. Such conduct does not constitute sexual harassment, much less rise to the level of an Eighth Amendment deprivation.

Plaintiff also claims that Defendants Place, Tribley, Delene, and Lesatz instituted a custom involving the repeated awakenings of prisoners with banging doors and a flashlight in the face. Plaintiff asserts that this treatment can lead to Diabetes. However, Plaintiff fails to allege any facts in support of such an assertion. The Court notes that "[r]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Plaintiff has failed to allege an extreme deprivation. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

As noted above, Plaintiff complains that the constant presence of security officers during his contact with health care workers resulted in security officers commenting on the number

of medications that Plaintiff takes, breathing over Plaintiff's medications, seeing what medications Plaintiff is on, and listening to details regarding Plaintiff's medical condition. However, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants arising from the alleged comments regarding his medications.

Plaintiff claims that Defendants have violated his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, Petitioner must show that he is a "qualified person," that he has a "disability," and that he is being denied a "service, program, or activity" of the state. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Petitioner does not clearly identify his alleged disability, but he seems to be referring to the fact that he was the victim of molestation as a child and suffers from depression. However, Plaintiff does not allege or show how his condition limits one or more of the major life activities. Nor does Plaintiff allege facts showing that he has been denied a "service, program, or activity" on the basis of his asserted handicap. Therefore, Plaintiff's ADA claims are properly dismissed.

Plaintiff alleges that Defendants Place, Tribley, Lesatz, Niemi, and Delene "clandestinely" instituted a ban on filing grievances by: "1) trashing the grievance on PILL POSSESSION OF PRISONER'S, 2) By creating an 'unsafe' environment, and 3) Denying access to the court." The Court notes that this claim is entirely conclusory. However, even if Plaintiff supported this claim with specific factual allegations, it is properly dismissed. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the

grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-416 (6th Cir. 2014) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds

that Plaintiff fails to state a cognizable claim with regard to the allegedly clandestine ban on filing grievances.

Finally, Plaintiff asserts that Defendants conduct violated his rights under state law. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice to his ability to file such claims in state court.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: September 30, 2016 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE